# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

VICTORIA SUNDERMAN,

    Plaintiff,

v.                                             Case No. 8:23-cv-01367-AAS

MARTIN O'MALLEY,
**Commissioner of the**
**Social Security Administration,**[1]

    **Defendant.**
_____/

## ORDER

Plaintiff Victoria Sunderman requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claim for Disability Insurance Benefits (DIB). After reviewing the record, including the transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the parties' memoranda, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

Ms. Sunderman applied for a period of disability and DIB on October 28, 2020, with an alleged disability onset date of October 17, 2017. (Tr. 232–40).

---

[1] On December 20, 2023, Martin O'Malley became the Commissioner of the Social Security Administration.

The Social Security Administration denied Ms. Sunderman's applications initially and after reconsideration. (Tr. 77–88, 103–23). At Ms. Sunderman's request, the ALJ held a hearing on December 15, 2022. (Tr. 177–200). On February 28, 2023, the ALJ issued a decision unfavorable to Ms. Sunderman. (Tr. 14–48). The Appeals Council denied Ms. Sunderman's request for review, making the ALJ's decision final. (Tr. 1–6). Ms. Sunderman now requests judicial review of the Commissioner's decision. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

**A. Background**

Ms. Sunderman was thirty-nine years old on October 15, 2017, her alleged onset date, and forty-four years old on December 31, 2022, her date last insured. (Tr. 77, 234, 241). Ms. Sunderman has a high school education and past relevant work as a data entry clerk, server, painter, and teacher. (Tr. 40–41, 69–70, 255). Ms. Sunderman alleged disability due to fibromyalgia, post-traumatic stress disorder (PTSD), depression, anxiety, and extreme fatigue. (Tr. 254).

**B. Summary of the Decision**

The ALJ must follow five steps when evaluating a claim for disability.[2] 20 C.F.R. § 404.1572(a). First, if a claimant is engaged in substantial gainful

---

[2] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 404.1520(a)(4).

2

activity,[3] she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant has no impairment or combination of impairments significantly limiting her physical or mental ability to perform basic work activities, she has no severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, she is not disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from performing her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work experience) do not prevent her from performing work that exists in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

The ALJ determined Ms. Sunderman had not engaged in substantial gainful activity since October 17, 2017, her alleged disability onset date, through December 31, 2022, her date last insured. (Tr. 19). The ALJ found Ms. Sunderman had these severe impairment impairments: fibromyalgia, hyperlipidemia, migraines, esophageal disease, dermatitis, depressive disorder, anxiety disorder, and PTSD. (Tr. 19–20). However, the ALJ concluded

---

[3] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. § 404.1572.

3

Ms. Sunderman's impairment or combination of impairments failed to meet or medically equal the severity of an impairment in the Listings. (Tr. 20).

After considering the functional effects of Ms. Sunderman's impairments, the ALJ found Ms. Sunderman had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b),[4] except:

> [Ms. Sunderman] must avoid concentrated exposure to excessive noise, vibration, and environmental irritants, such as fumes, odors, dusts, and gases, and she could perform simple tasks with no interactions with the public, occasional interaction with coworkers and supervisors, and no tandem tasks.

(Tr. 23–24).

Based on these findings and the testimony of the vocational expert (VE), the ALJ determined Ms. Sunderman could not perform her past relevant work but there were jobs available in significant numbers in the national economy Ms. Sunderman could perform. (Tr. 40–41). Specifically, Ms. Sunderman could perform the jobs of office helper, garment sorter, and gate attendant. (Tr. 42). Thus, the ALJ found Ms. Sunderman was not disabled from October 17, 2017, her alleged onset date, through December 31, 2022, her date last insured. (*Id.*).

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. 404.1567(b).

4

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also*

5

*Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B. Issue on Appeal

Ms. Sunderman raises three issues on appeal: (1) whether the ALJ properly considered Ms. Sunderman's fibromyalgia symptoms; (2) whether the ALJ properly considered the third-party statements of Ms. Sunderman's former employer when assessing her RFC; and (3) whether substantial evidence supports the ALJ's finding that Dr. Sampath Manickam's medical opinion was not persuasive. (Doc. 21). The court will consider each issue in turn.

### 1. Symptoms of Fibromyalgia

Ms. Sunderman argues the ALJ erred in considering her symptoms of fibromyalgia. (Doc. 21, pp. 3–10). Specifically, Ms. Sunderman contends the ALJ erred by failing to properly consider Ms. Sunderman's fibromyalgia when he formulated Ms. Sunderman's RFC, weighed her subjective complaints, and weighed the medical opinions. (*Id.*). The Commissioner responds that the ALJ properly considered Ms. Sunderman's fibromyalgia symptoms under the relevant regulations and Ms. Sunderman failed to prove she was more limited than the RFC determined by the ALJ. (Doc. 27, pp. 7–13).

The ALJ found Ms. Sunderman's fibromyalgia was a severe impairment at step two of the sequential evaluation process. (Tr. 19–20). Fibromyalgia is "characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." *Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987 (11th Cir. 2015); *see also* SSR 12-2p, 2012 WL 3017612. Fibromyalgia symptoms "can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p at *43644. As such, "longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment." *Id.* at *43642.

In evaluating a claimant's subjective complaints of pain, including pain caused by fibromyalgia, an ALJ must apply the three-part "pain standard" explained by the Eleventh Circuit and required by the Social Security Administration's (SSA) regulations. *Laurey*, 632 F. App'x at 987 (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)); 20 C.F.R. § 404.1529; *see also* SSR 16-3p, 2016 WL 1020935. To establish disability under this standard, a claimant must show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Id.*; *see also Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 676 (11th Cir. 2020) (citing *Foote v. Chater*, 67 F.3d

7

1553, 1560 (11th Cir. 1995)). "[O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ must then "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" SSR 16-3p at *14167.

If the ALJ discredits a claimant's subjective complaints of pain, the ALJ must articulate "explicit and adequate reasons" for doing so. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The ALJ's decision "does not need to cite 'particular phrases or formulations' but it cannot merely be a broad rejection which is 'not enough to enable [the court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1567). On appeal, "[t]he question is not . . . whether [the] ALJ could have reasonably credited [a claimant's pain] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938–39 (11th Cir. 2011). If the ALJ's "clearly articulated credibility finding" is supported by substantial evidence in the record, the ALJ's finding shall not be disturbed. *Foote*, 67 F.3d at 1562; *Dyer*, 395 F.3d at 1212 (reversing the district court's reversal of the ALJ because "the district court improperly reweighed the evidence and failed

to give substantial deference to the Commissioner's decision" to discredit claimant's subjective testimony).

Here, after the ALJ found Ms. Sunderman's severe impairments included fibromyalgia, the ALJ properly evaluated the relevant evidence and found Ms. Sunderman's statements about the intensity, persistence, and limiting effects of her alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 24–25). As the ALJ discussed, while Ms. Sunderman reported malaise, fatigue, and chronic pain related to fibromyalgia, and rheumatologist Sampath Manickam, M.D., noted tender points in Ms. Sunderman's upper back and shoulders, treatment records consistently documented normal range of motion, no neurological deficits, a normal gait, and Ms. Sunderman was "comfortable" and in "no distress" during her rheumatology visits. (*See* Tr. 24–25, 386–87, 429, 460, 465, 475, 479, 515, 521, 527, 533, 539, 544, 549, 553, 557, 584, 591, 597, 604, 639–40, 729, 735, 741, 747, 753, 758, 763, 767, 803, 845, 849, 986–87, 1019, 1025-26, 1037). The ALJ found these objective findings supported some functional limitations, for which he accounted in the RFC assessment, but did not support the limitations Ms. Sunderman alleged. (Tr. 22).

The ALJ then properly evaluated Ms. Sunderman's activities to determine whether they supported the limitations she alleged. (Tr. 26); *see* 20 C.F.R. § 404.1529(c)(3)(i); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987)

9

(holding the ALJ may consider a claimant's daily activities when evaluating her subjective complaints and determining the RFC). The ALJ noted Ms. Sunderman reported she exercised regularly by doing yoga, Tai Chi, swimming, and walking. (Tr. 26, 544, 549, 556, 636, 803, 986). The ALJ further noted Ms. Sunderman reported working, at least part time; she could prepare meals; she washed dishes and performed personal care; she could drive and go out alone; and on her days off from work, she stayed busy with household chores, visiting family, doing food preparation, and shopping. (Tr. 23–37, 313–21, 334–35, 625, 803, 962, 974, 1009). While performance of some activities is not alone sufficient evidence to contradict a finding of disability, the ALJ considered Ms. Sunderman's daily activities as one factor in his subjective symptom analysis. *See Lemons v. Comm'r, Soc. Sec. Admin.*, No. 22-10198, 2022 WL 4489646, at *2–3 (11th Cir. Sept. 28, 2022) ("An ALJ may discredit a claimant's subjective complaints based, at least in part, on daily activities.") (citing *Dyer*, 395 F.3d at 1210–12); *Conner v. Astrue*, 415 F. App'x 992, 995 (11th Cir. 2011) (same).

Under SSR 12-2p, the ALJ also considered the efficacy of Ms. Sunderman's treatment and medication. (Tr. 26–39). The ALJ noted Ms. Sunderman showed some improvement with consistent treatment, and the treatment records did not document worsening in Ms. Sunderman's condition. (*See* Tr. 26, 28, 36, 39, 539, 553, 995–96). The ALJ further found Ms.

10

Sunderman's use of medications did not suggest an impairment more limiting than found in the ALJ's decision, and there is no evidence of any significant mediation side effects. (Tr. 38). The ALJ further considered the psychological effects of Ms. Sunderman's pain on her ability to perform work activities and included limitations in the RFC assessment to account for those effects. (Tr. 38). Specifically, the ALJ limited Ms. Sunderman's exposure to environmental conditions that could aggravate her conditions or exacerbate her pain and assessed psychological limitations to account for her complaints of pain and mental health symptoms. (*Id.*). The ALJ complied with SSR 12-2p and the Eleventh Circuit's pain standard in his evaluation of Ms. Sunderman's fibromyalgia by examining her subjective complaints, the objective medical evidence, her reported activities, and her response to treatment.

The ALJ therefore provided explicit and adequate reasons for discounting Ms. Sunderman's subjective complaints of pain, and the decision that her subjective complaints of total disability were not entirely consistent with the evidence was supported by substantial evidence. *See Holt*, 921 F.2d 1223. The court may not disturb the ALJ's clearly articulated credibility finding and cannot reweigh the evidence on appeal. *Dyer*, 395 F.3d at 1212; *Foote*, 67 F.3d at 1562.

### 2. Third Party Statements

Ms. Sunderman argues the ALJ failed to properly consider the third-party statements of her former employer, Bryan Clifford. (Doc. 21, pp. 10–13). Specifically, Ms. Sunderman contends the ALJ failed to properly consider a letter from Mr. Clifford about Ms. Sunderman's work accommodations. (*Id.*). The Commissioner responds that the ALJ properly considered the letter from Mr. Clifford and did more than required by also discussing the weight afforded Mr. Clifford's questionnaires. (Doc. 27, pp. 13–15).

Under the regulations, evidence from non-medical sources, such as job coaches and employers, may be received into the administrative record. 20 C.F.R. § 404.1513(a)(4). Under 20 C.F.R. § 404.1529, evidence from nonmedical sources may show the severity of a claimant's symptoms and how it affects her ability to work. 20 C.F.R. § 404.1529(a), (c). The testimony of nonmedical sources "is evidence of [the claimant's] subjective feelings of pain." *See Osborn v. Comm'r of Soc. Sec.*, 194 F. App'x 654, 666 (11th Cir. 2006) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983)). But the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources using" the persuasiveness factors. 20 C.F.R. § 404.1520c(d).

Mr. Clifford submitted a letter explaining the accommodations given Ms. Sunderman to work part time. (Tr. 381). The ALJ specifically referenced the Ms. Clifford's letter when stating Ms. Sunderman's ongoing work activity was

12

accommodated. (Tr. 19). The ALJ also considered the third-party questionnaires Mr. Clifford completed. (*See* Tr. 40, 290-300, 339-41). As the ALJ explained, Mr. Clifford was not familiar with many aspects of Ms. Sunderman's daily life outside of work and responded "I Don't Know" to most questions on the questionnaires. (*Id.*). The ALJ further found the information Mr. Clifford provided generally follows Ms. Sunderman's alleged limitations but is only partially consistent with medical evidence. (Tr. 40). Because of this inconsistency, the ALJ found Mr. Clifford's questionnaires not fully persuasive. (*Id.*).

Thus, the ALJ properly considered the statements from Mr. Clifford and was under no obligation to afford additional weight to these third-party source statements. Substantial evidence supports the ALJ's assessment of these statements.

### 3. Medical Opinion Evidence

Ms. Sunderman argues the ALJ erred in finding Dr. Manickam's opinion not persuasive. (Tr. 21, pp. 13–20). The Commissioner responds that the ALJ properly considered Dr. Manickam's medical opinion under the relevant regulations and the ALJ's consideration of that opinion was supported by substantial evidence. (Doc. 27, pp. 15–19).

When considering medical opinion evidence submitted by a medical source, an ALJ must "articulate . . . how persuasive [he] find[s] all of the

medical opinions . . . in [the] case record," consistent with the standards in 20 C.F.R. § 404.1520c. 20 C.F.R. § 404.1520c(a)–(b). Under the regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," including those from a claimant's medical sources. *Id.*; *see also Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) ("Under the new regulatory scheme, the ALJ must articulate how persuasive he finds each medical opinion, but he no longer must assign more weight to a treating source's medical opinion or explain why good cause exists to disregard it."). Instead, the regulations provide "several factors for determining what weight to give a claimant's proffered medical opinions." *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)–(5)).

While there are several factors the ALJ must consider, "[t]he most important factors" are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). "Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical

14

opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ must explain how he "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings," but need not discuss the other factors. 20 C.F.R. § 404.1520c(b)(2); *see Callahan v. Comm'r of Soc. Sec.*, No. 22-12701, 2023 WL 3736042, at *1 (11th Cir. May 31, 2023) ("Supportability and consistency are the most important factors and must be explained, but the ALJ is not required to explain the other factors."). When a medical source submits multiple medical opinions, the ALJ need not discuss each opinion, but will instead "articulate how [he] considered the medical opinions . . . from that medical source together in a single analysis," considering the necessary factors. 20 C.F.R. § 404.1520c(b)(1).

As the ALJ discussed, Dr. Manickam opined Ms. Sunderman could stand/walk less than two hours, sit about two hours, and lift or carry no more than ten pounds. (Tr. 39, 823–27). Dr. Manickam further opined Ms. Sunderman had significant limitation in postural activities and would miss more than four days of work a month. (*Id.*). The ALJ noted Dr. Manickam stated Ms. Sunderman had chronic joint pain and muscle spasms with multiple tender points secondary to fibromyalgia. (Tr. 39, 823). The ALJ also noted Dr.

15

Manickam's treatment records documented ongoing treatment with findings of multiple tender points, mostly to the back and shoulder. (*Id.*).

Based on the ALJ's review of Dr. Manickam's records, the ALJ found Dr. Manickam's records do not support the severity of the limitations opined. (Tr. 39). Specifically, the ALJ found Ms. Sunderman showed some improvement with treatment, and the records document no worsening in findings. (*Id.*). The ALJ also noted Dr. Manickam's records consistently showed no joint swelling or deformity and normal range of motion in the upper and lower extremities and the spine. (*See* Tr. 39, 515, 521, 527, 533, 539, 544, 549, 553, 557, 584, 591, 597, 604, 729, 735, 741, 747, 753, 758, 763, 767, 803, 986–87, 1019). The ALJ then cited evidence supporting his determination Dr. Manickam's opinion was not consistent with the other treatment records in the file. (Tr. 39). Specifically, the ALJ noted Ms. Sunderman's other treatment records that reported no neurological deficits and a normal gait. (*See* Tr. 39, 24–25, 386–87, 429, 460, 465, 475, 479, 639–40, 845, 849, 1025–26, 1037).

The ALJ properly stated his consideration of the supportability and consistency of Dr. Manickam's medical source statements as required by 20 C.F.R. § 404.1520c and that consideration was supported by substantial evidence in the record. To the extent Ms. Sunderman identifies other evidence in the record she contends supports or is consistent with Dr. Manickam's opinions, the court cannot reweigh the evidence or substitute its judgment for

16

that of the ALJ. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]."); *see Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.").

## IV. CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED**, and the Clerk of Court is directed to enter judgment for the Commissioner and close the case.

**ORDERED** in Tampa, Florida on August 14, 2024.

_____
AMANDA ARNOLD SANSONE
United States Magistrate Judge